UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRADLEY MICHAEL GUSTAFSON,   )
                             )
            Plaintiff,       )     Case No. 1:12-cv-49
                             )
v.                           )     Honorable Janet T. Neff
                             )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )     **REPORT AND RECOMMENDATION**
            Defendant.       )
_____)

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). In a decision entered on November 19, 2001, plaintiff was found disabled as of January 1, 1999, on the basis of his attention deficit hyperactivity disorder (ADHD), intermittent explosive disorder, borderline intellectual functioning, learning disorder and dependent traits. (A.R. 24). On February 14, 2007, the Social Security Administration found that plaintiff was no longer disabled. (A.R. 48-50). Plaintiff sought administrative review of the decision. On November 4, 2009, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 504-27). On December 11, 2009, the ALJ issued a decision finding that plaintiff was not disabled on and after February 1, 2007. (A.R. 10-31). The Appeals Council granted plaintiff's request for review. On November 21, 2011, the Appeals Council found that plaintiff was not disabled at any time from February 1, 2007, through March 31, 2009, his date last disability insured. (A.R. 8-13).

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision finding that he was not disabled on and after February 1, 2007. He asks the court to overturn the Commissioner's decision on the following grounds:

1. The Commissioner "committ[ed] legal error in failing to properly consider the appropriate listing of impairment relative to mental functioning[;]" and

2. There is not substantial evidence "support[ing] the conclusion that the claimant's impairments have improved to the point where he is now capable of substantial gainful activity[.]"

(Statement of Errors, Plf. Brief at 5, docket # 9). Plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The Appeals Council "agree[d] with the Administrative Law Judge's findings and conclusion that the claimant's disability ended as of February 1, 2007." (A.R. 11). The most recent decision finding plaintiff disabled was dated November 19, 2001. This decision was the "'comparison point decision' or CPD." (A.R. 24). At the time of the CPD, plaintiff had the following medically determinable impairments: attention deficit hyperactivity disorder (ADHD),

intermittent explosive disorder, borderline intellectual functioning, learning disorder, and dependent traits. These impairments were found to result in an inability to perform even simple tasks on a sustained basis. (A.R. 25). Plaintiff had not engaged in substantial gainful activity.[1] (A.R. 25). On February 1, 2007, plaintiff had the following medically determinable impairments: depressive disorder, attention deficit hyperactivity disorder, history of intermittent explosive disorder, borderline intellectual functioning, learning disorder, and dependent traits. (A.R. 25). On and after February 1, 2007, plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 25). The ALJ found that medical improvement had occurred as of February 1, 2007. (A.R. 25). The ALJ found that on and after February 1, 2007, plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, as of February 1, 2007, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to low stress work which defined here, involves the performance of only unskilled entry level jobs that involve 1, 2, or 3-step work processes, and which does not entail dealing with the public.

(A.R. 27). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (A.R. 27-29). Plaintiff's medical improvement was "related to his ability to work because it resulted in an increase in [his] residual functional capacity." (A.R. 29). Plaintiff had no past relevant work. (A.R. 30). Plaintiff was 28-years-old on February 1, 2007, and 32-years-old as of the date of the Appeals Council's decision. Thus, at all times relevant to his claim for benefits, plaintiff was classified as a younger individual. (A.R. 30). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 30). The transferability of job skills

---

[1] Plaintiff worked on various occasions, but "the compensation earned was less than that denoted in the regulations as substantial gainful activity." (A.R. 25).

was not an issue because plaintiff had no past relevant work. (A.R. 30). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 29,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 522-23). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 30-31). The Appeals Council granted review, adopted the ALJ's findings, and clarified in its opinion that "March 31, 2009, [was] the date [plaintiff] last met the disability insured status requirements of the Act." (A.R. 12). The Appeals Council held that plaintiff's "disability ended as of February 1, 2007 (20 CFR 404.1594(f)(8)[)], and the [plaintiff] did not again become disabled at any time through March 31, 2009, the date he last met the disability insured requirements of the Act." (A.R. 13).

**1.**

Plaintiff argues the ALJ committed legal error "in failing to properly consider" listing 12.05(C), "the appropriate listing of impairment relative to mental functioning." (Plf Brief at 8-9). He states: "Not only did the Commissioner fail to find that the listing applied, contrary to the substantial evidence of record, but there is not even an appropriate consideration of the listing." (Plf. Brief at 10). Plaintiff's argument is meritless.

It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). The listing must be read as a whole and plaintiff had the burden of demonstrating that he met all parts of the listing. "If all the requirements of the listing are not

present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at * 1 (6th Cir. Nov. 29, 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of the listing for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

> 12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR

>    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>    OR
>    D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The ALJ found that plaintiff did not meet or equal the requirements of listing 12.05(C) or any other listed impairment:

> As of February 1, 2007, the claimant's impairments, considered individually and in combination, did not meet or medically equal a listing. The claimant does not meet section 12.05C as argued by counsel, or any other subsections of that listing. Over his lifetime, the claimant underwent evaluations on which he had instances of IQs as low as 68. On most test measures, the claimant's IQs were above 70, including the sole results (V-71, P-88, FS-76) obtained during the period currently under consideration. Moreover, the claimant does not have significant deficits in adaptive functioning. The claimant graduated from high school in a blended curriculum; he is able to read and do basic math; he can dress and bathe himself properly and take care of his personal needs; he can prepare simple meals and complete basic household chores.
>
> In terms of limitations stemming from his mental impairment, the claimant has "mild" restrictions in activities of daily living (as mentioned, he performs adaptive functions such as simple meal preparation, cleaning, shopping, caring appropriately for personal grooming and hygiene); "moderate" difficulties in maintaining social functioning (has had past explosive temper and relational difficulties that have not manifested seriously during the period at issue; functions in social settings e.g., store clerks/church congregation; has few meaningful interpersonal relationships); and "moderate" deficiencies in concentration, persistence or pace in completing tasks in a timely manner (operated a motor vehicle; used a check book and attended to some financial matters; no profound cognitive dysfunction documented in terms of awareness, orientation, memories, or fund of information or simple calculations). There are "no" episodes of decompensation of extended duration, and no relevant "C" criteria present.

(A.R. 25). The ALJ considered the appropriate listing. Among other things, listing 12.05(C) requires a valid verbal, performance, or full scale IQ of 60 through 70. The ALJ found that all

plaintiff's IQ scores during the period at issue were higher than 70. The ALJ is responsible for making factual findings regarding the validity of IQ scores, not the court. *See Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001)(citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *see also Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases); *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (same). Plaintiff did not have any physical impairments. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534; *see Rogers v. Commissioner*, 486 F.3d at 241. The ALJ's finding that plaintiff did not meet or equal the requirements of listing 12.05(C), later adopted by the Appeals Council, is supported by substantial evidence.

**2.**

Plaintiff argues there is not substantial evidence "support[ing] the conclusion that the claimant's impairments have improved to the point where he is now capable of substantial gainful activity[.]" (Plf. Brief at 10). He argues that his testimony was credible, his father's testimony was credible, and that greater weight should have been given to the opinions of a consultative examiner and a social worker. All the aforementioned arguments were presented to and rejected by the Appeals Council. (A.R. 12). I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.

A.  Credibility

Plaintiff argues that the ALJ should have accepted his testimony and his father's testimony. Credibility determinations are peculiarly within the province of the ALJ. *See Gooch v.*

*Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ carefully explained why the testimony in question was not fully credible:

> The claimant alleged an inability to work due to learning, attentional, mood and anger issues. The claimant indicated that he lacked comprehension, focus, the ability to multitask or handle stress. The claimant reported that he sometimes became angry, frustrated, and easily confus[ed]. According to the claimant, his condition limited his ability to understand complicated instructions, concentrate, remember, read or persist on task. Gary Gustafson, the claimant's father, indicated that his son had trouble carrying out more than routine tasks, as he tended to lose track of multiple responsibilities. Mr. Gustafson indicated that the claimant did quite well when he was given a simple task with direction.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity for the reasons explained below.

Specifically, no physician imposed a work preclusive limitation on the claimant's functioning. The undersigned notes the results of intelligence and clinical evaluations which do not unveil totally debilitating pathology. Over time, the claimant has been diagnosed with an affective, personality-related and attention deficit disorders. Since the CPD (and for at least some period before), these conditions have not profoundly compromised the claimant's functionality. The claimant was not psychiatrically hospitalized, and he did not participate in regular outpatient counseling or psychotherapy. Unlike the circumstances at the CPD, the claimant has not had legal difficulties related to anger, impulsivity or maladaptive behavior. The claimant appears to maintain better interpersonal relationships. During the hearing, the claimant indicated that he had not had recent conflicts with co-workers/supervision at his places of employment. The claimant does not utilize medication for attentional difficulties, and his presentations were not notable for significant psychomotor agitation or marked distraction. The claimant most certainly has documented intellectual deficits, yet the evidence of record does not suggest or establish that he lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple, routine and somewhat isolated in nature, as depicted in the residual functional capacity adopted. He can read the guide on television, traffic signs, food labels, etc. The claimant is capable of properly attending to his personal needs, grooming, dressing and hygiene. The claimant completed simple meals (macaroni and cheese, sandwiches, tomato soup and grilled cheese) and basic household chores such as laundry and vacuuming. In addition, the claimant shopped, and used a check book (with help), and cut the lawn with a rider mower. Further, the claimant rode a bike, took public transportation and went for walks. Moreover, the claimant attended church services, spent time with family and a few friends, used a computer and spent a great deal of time playing video and Internet games (Exhibits 11E, 15E, 6B, 42F and testimony)[A.R. 55-67, 147-54, 172-86, 412-14]. The claimant is physically health[y]. The record divulges no evidence of orthopedic, neurological, vascular or other chronic physical afflictions which hinder his ability to function.

(A.R. 28). The Appeals Council found that the ALJ's opinion was "sufficiently specific to make clear the reason for the Administrative Law Judge's finding on credibility." (A.R. 12). I agree. Further, the ALJ's factual finding regarding credibility is supported by more than substantial evidence.

B.  Consultative Psychologist Bentley

Plaintiff argues that the Commissioner should have given more weight to a consultative evaluation performed by Psychologist Douglas Bentley. (Plf. Brief A.R. 12-13). On September 6, 2008, Psychologist Bentley performed a psychological evaluation on a referral from plaintiff's attorney. (A.R. 458-61). The ALJ considered the opinions expressed by Bentley, but did not find them to be persuasive:

> The undersigned considered the brief report from, and the views expressed by Dr. Bentley, who administered aforementioned intelligence and personality inventory evaluations during a one-time meeting (Exhibit 52F)[A.R. 458-61]. Dr. Bentley concluded that the claimant's conditions would make it difficult for him to sustain any employment beyond a sheltered workshop. According to the doctor, employment for the claimant was unlikely to be attainable or successful. Dr. Bentley's opinion is not accorded significant weight, because it is not supported by the record as a whole, including the clinician's own test measure findings. The claimant's Wechsler results showed at least borderline abilities, and the doctor reported that his clinical MMPI-2 scales did not reflect evidence of psychopathology.

(A.R. 29). The ALJ is responsible for weighing psychological opinions, not the court. *See Buxton*, 246 F.3d at 772-75; *accord White v. Commissioner*, 572 F.3d at 284. The Appeals Council adopted the ALJ's findings. I find no basis for disturbing the Commissioner's decision.

C.  Social Worker Gute

Plaintiff argues that the Commissioner should have given more weight to the opinions of his "treating therapist," social worker Katherine Gute. (Plf. Brief at 13-15). A social worker is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d); *see also Payne v. Commissioner*, 402 F. App'x 109, 119 (6th Cir. 2010) ("[S]ocial workers are not acceptable medical sources under social security regulations."). There is no "treating social worker rule," and the opinion of a social worker is not entitled to any particular weight. *See Hayes v. Commissioner*, No.

1:09-cv-1107, 2011 WL 2633945, at * 6 (W.D. Mich. June 15, 2011) (collecting cases). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The opinions of a social worker fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard. It was easily met here. The ALJ found that the restrictions suggested by Ms. Gute were not supported by the record:

> Though not a source of "medical" evidence, the undersigned examined the findings and comments of social worker K. Gute, LMSW, ACSW (Exhibits 53F, 54F)[A.R. 462-94]. Ms. Gute opined that in light of the claimant's marginal intellectual functioning coupled with his deficits in multiple areas of daily living, he met the Social Security Disability criteria. Ms. Gute listed limitations for the claimant that were incompatible with the performance of full time competitive employment (marked limitation in ability to: make simple work-related decisions; understand and remember very short and simple instructions; work in coordination with or proximity to others without being distracted; accept instructions and respond appropriately to criticism, etc.). [] Ms. Gute indicated that she counseled the claimant "off and on over the course of six years (Exhibit 53F)[A.R. 462]. The claimant testified that he had seen the social worker on two occasions when his youngster passed some six years ago.

> [A.R. 516-17]. The record does not reflect an ongoing treatment relationship between the claimant and Ms. Gute, though the social worker did recently see him apparently on attorney referral [A.R. 477-80]. Ms. Gute's conclusions are not well supported objectively by, or consistent with, the body of evidence, including the claimant's own testimony concerning his social interactions. Ms. Gute assigned a global assessment of functioning score (GAF) ranging from 35-50 to the claimant [A.R. 479]. Such ratings, as defined by the <u>Diagnostic and Statistical Manual of Mental Disorders, 4th Edition</u>, denote major to serious symptomatology. The undersigned notes that the Sixth Circuit has rejected the proposition that a determination can be based solely on an individual's GAF score. The determination must be made on the entire record and not only on some of the evidence to the exclusion of all other relevant evidence (Davis v. Chater, No. 95-2235, 1996 U.S. App. Lexis; Rutter, 1996 U.S. App. Lexis 19136; Hardaway v. Secretary of Health and Human Services 1987).

(A.R. 29).

The ALJ's finding that plaintiff failed to present evidence establishing an ongoing treatment relationship with Ms. Gute is supported by substantial evidence. The low GAF scores Ms. Gute provided were not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no

bearing on the subject's social and occupational functioning."[2]  *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).  The Commissioner's finding that Ms. Gute's opinions were entitled to little weight was entirely consistent with applicable law and was supported by more than substantial evidence.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   January 28, 2013              /s/  Joseph G. Scoville
                                       United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

---

[2] "Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).  GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).